UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

THOMAS BROWDY                 :
                               :           PRISONER
        v.                  :   Case No.  3:03CV1981(DFM)
                                 :
THERESA C. LANTZ, et al.     :

RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

The plaintiff, Thomas Browdy, a former inmate, brings this civil rights action pro se pursuant to 28 U.S.C. § 1915, challenging his redesignation as a Security Risk Group Threat Member and the conditions of confinement in a restricted housing unit.  The defendants[1] have moved for summary judgment and the plaintiff has filed a cross motion for summary judgment.  For the reasons that follow, the defendants' motion is granted and the plaintiff's motion is denied.

I.   Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See Rule 56(c), Fed. R. Civ. P.; Anderson v.

---

[1]The named defendants are Theresa C. Lantz, Neftali Rodriguez, John Aldi, Brian Bradway and Melissa Murray.

Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000).  A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact....'"  Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted).  A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.) (quoting Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965 (1992).  After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present "significant probative evidence to create a genuine issue of material fact."  Soto v. Meachum, Civ. No. B-90-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991).  A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986),

cert. denied, 480 U.S. 932 (1987).

The court "resolve[s] all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought." Patterson v. County of Oneida, NY, 375 F.3d 206, 218 (2d Cir. 2004).  Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).  See also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992). A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements.  See Securities & Exchange Comm'n v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978).  Nor may he rest on the "mere allegations or denials" contained in his pleadings.  Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).  See also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible).  A self-serving affidavit which reiterates the conclusory allegations of the complaint in affidavit form is insufficient to preclude summary judgment.  See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990).  In addition, "'[t]he mere of existence of a scintilla of evidence in support of the [plaintiffs'] position

will be insufficient; there must be evidence on which the jury could reasonably find for the [plaintiffs].'" Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004) (quoting Anderson, 477 U.S. at 252).

Where one party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them to raise the strongest arguments suggested therein. See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Despite this liberal interpretation, however, a "bald assertion," unsupported by evidence, cannot overcome a properly supported motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

When cross-motions for summary judgment are presented to the court, summary judgment should not be granted "unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely in dispute." Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975).

II.  Facts[2]

The plaintiff is an affiliate of the 20 Love gang.  In 1994, he was designated a Security Risk Group Member.[3]  In December

---

[2]The facts are taken from the defendants' Local Rule 56(a)1 and (a)2 Statements with supporting exhibits [docs. #77 & 99] and the plaintiff's Local Rule 56(a)1 and (a)2 Statements with supporting exhibits and declaration [docs. ##91 & 100].

[3]The Connecticut Department defines a Security Risk Group as:  "A group of inmates, designated by the Commissioner, possessing common characteristics which serve to distinguish them from other inmates or groups of inmates and which as a discrete

1995, the plaintiff received a disciplinary report for assaulting his cellmate.  In January 1996, the plaintiff was notified that a Security Risk Group Threat Member ("SRGTM") hearing had been scheduled to determine his classification status.  Following the hearing, the plaintiff was designated SRGTM and assigned to the close custody program.

All inmates designated SRGTM are housed in the close custody unit, a housing unit more restrictive than general population. The close custody program, described in Department of Correction Administrative Directive 6.14, requires that inmates progress through all three phases of the close custody program before they return to general population.  When an SRGTM inmate is discharged before completing the close custody program and is later readmitted to prison, he is classified upon readmission at the same status as he had when discharged.  That status is then reviewed within ninety days of readmission.

The plaintiff was confined in the close custody program at Garner Correctional Institution from April 1996 until he was discharged at the completion of his sentence on September 24,

---

entity poses a threat to the safety of staff, the facility, other inmates or the community."  Street gangs are included within this description.  If a Security Risk Group Member displays a leadership role or is involved in an incident within the correctional facility that threatens safety and security, the inmate is then designated a Security Risk Group Safety Threat Member.  See Connecticut Department of Correction Administrative Directive 6.14 (3)(E)-(G), www.ct.gov/doc/LIB/doc/PDF/AD/ad0614.pdf.

1997.  He had not completed the close custody program before he was discharged.  The plaintiff was readmitted and discharged[4] from custody several times between September 1997 and March 2002, the readmission date relevant to the allegations in this action.

On July 23, 2002, the plaintiff was notified that he was being placed in restrictive housing pending a transfer to the close custody program because he was classified as SRGTM.  On July 30, 2002, the plaintiff received notice of a ninety-day review hearing.  An advocate was appointed at the plaintiff's request, but the plaintiff rejected the advocate's assistance at the hearing.  The plaintiff requested a continuance to review witness statements.  The request was denied.

The hearing officer determined that because the plaintiff had been afforded due process at the original designation hearing in 1996, his SRGTM designation should continue until the plaintiff successfully completed the close custody phase program.  Thus, the plaintiff was returned to phase one of the close custody program, the phase level he was in prior to discharge.  The plaintiff was provided notice of the decision on August 12, 2002.

While participating in phase one of the close custody program, the plaintiff was offered the opportunity to progress to

---

[4]These periods of incarceration did not affect the plaintiff's classification to close custody status.

phase two.  He agreed to move to phase two with the understanding
that his current cellmate would progress with him.  At the same
time, the plaintiff requested a mental health examination.
Defendant Rodriguez relayed the request to the mental health
staff.

The plaintiff's cellmate received a disciplinary report and
was returned to phase one.  At the suggestion of the mental
health staff, the plaintiff was permitted to participate in the
choice of his new cellmate.  About two weeks later, the plaintiff
assaulted his new cellmate by trying to stab him in the eye with
a pen.  In response, the cellmate bit the plaintiff and hit him
in the eye with an electrical adaptor in a sock.  The plaintiff
suffered a bite mark, abrasions and eye trauma.

III. <u>Discussion</u>

The plaintiff asserts seven claims:  (1) he was denied due
process and equal protection during the August 2002 close custody
review hearing, (2) the practice of notifying law enforcement
when a SRGTM inmate is released from custody before completing
the phase program and then reclassifying the inmate at the same
level upon readmission is unconstitutional; (3) the close custody
program fails to protect inmates from assault by other inmates in
the program; (4) the defendants did not make accommodations in
the close custody program for the plaintiff's mental illness, (5)
the plaintiff was harassed by correctional staff in retaliation

for filing this action, (6) the defendants continued to impose disciplinary sanctions after the underlying disciplinary charge had been dismissed in retaliation for filing this action and (7) the defendants failed to comply with the Uniform Administrative Procedures Act when adopting policies regarding security designation and confinement.

The plaintiff's motion for summary judgment addresses only his claim for violation of his Fourteenth Amendment right to due process.  The defendants move for summary judgment as to all claims on nine grounds:  (1) all claims for damages against the defendants in their official capacities are barred by the Eleventh Amendment, (2) the plaintiff's claims are barred by res judicata, (3) defendant Lantz was not personally involved in any of the plaintiff's claims, (4) the plaintiff's due process rights were not violated, (5) the plaintiff's Eighth Amendment rights were not violated, (6} the plaintiff fails to state a claim for denial of equal protection of the laws, (7) the plaintiff fails to state a claim for violation of the Americans with Disabilities Act, (8) the plaintiff fails to state a claim for violation of the Uniform Administrative Procedures Act and (9) the defendants are protected by qualified immunity.

A.   <u>Eleventh Amendment</u>

The defendants argue that all claims for damages against them in their official capacities are barred by the Eleventh

Amendment.

The Eleventh Amendment immunity which protects the state from suits for monetary relief also protects state officials sued for damages in their official capacity. See Kentucky v. Graham, 473 U.S. 159 (1985). A suit against a defendant in his official capacity is ultimately a suit against the state if any recovery would be expended from the public treasury. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 n.11 (1984).

The operative complaint is the supplemental complaint filed on September 22, 2004 [doc. #19]. Although the plaintiff states that he seeks compensatory and punitive damages from all defendants, he does not specify whether he seeks these damages from the defendants in their official or individual capacities. Because official capacity claims for damages are not cognizable under section 1983, the defendants' motion for summary judgment is granted as to these claims.

B.   Res Judicata

The defendants next contend that this action is barred under the doctrine of res judicata and direct the court to a prior action filed by the plaintiff and two other inmates, Browdy, et al. v. Armstrong, et al., No. 3:96cv2153(JBA). In opposition, the plaintiff states only that the defendants did not submit the operative complaint from that case.

The plaintiff's statement is incorrect. The operative

9

complaint in the prior case is the original complaint filed on
October 22, 1996.  Although the plaintiffs sought leave to file
an amended complaint in conjunction with a motion for class
certification, the court denied both motions without prejudice to
the named plaintiffs seeking leave to file an amended complaint
supplementing the allegations regarding their own treatment.  The
named plaintiffs did not seek leave to amend.  Thus, the original
complaint remained the operative complaint.

The doctrine of res judicata bars a party from litigating a
claim more than once.  Under the doctrine, a final judgment on
the merits of an action precludes the parties from relitigating
claims that were or could have been raised in that action.  See
Allen v. McCurry, 449 U.S. 90, 94 (1980); Chase Manhattan Bank,
N.A. v. Celotex Corp., 56 F.3d 343, 345 (2d Cir. 1995).  To
prevail on res judicata as an affirmative defense, the defendants
must show that in the prior action there was a final judgment on
the merits, that the prior action involved the same parties or
their privies and that the claims asserted in the current action
were or could have been raised in the prior action.  See Monahan
v. New York City Dep't of Corrections, 214 F.3d 275, 285 (2d Cir.
2000).

The first requirement is that the prior action was a
judgment on the merits.  The previous action, filed by the
plaintiff and two other inmates, was dismissed, pursuant to Rule

10

41(b), Fed. R. Civ. P., for the plaintiffs' failure to prosecute. Rule 41(b) states that a dismissal for failure to prosecute is an adjudication on the merits.[5]  The Supreme Court has noted that dismissals for failure to prosecute or to comply with court rules or orders "primarily involve situations in which the defendant must incur the inconvenience of preparing to meet the merits because there is no initial bar to the Court's reaching them" and held that such dismissals are adjudications on the merits that preclude the filing of a subsequent action.  Costello v. United States, 365 U.S. 265, 286 (1961).  Thus, the first requirement for res judicata has been satisfied.

The second requirement is that the two actions involved the same parties or their privies.  Privity is required to ensure that the interests of the party against whom res judicata is being asserted were adequately represented in the prior action. See Fink v. Magner, 988 F. Supp. 74, 78 (D. Conn. 1997).  Inmate Browdy was one of the plaintiffs in the prior action and is the plaintiff in this action.  Thus, as to the plaintiff, the underlying concern for the privity requirement is satisfied.

---

[5]Rule 41(b) provides:  "For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant.  Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits."

The next question is whether there is privity as to the defendant state officials.  Courts have held that privity exists between officers of the same government.  See Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 402-403 (1940); Cullen v. Paine Webber Group, Inc., 689 F. Supp. 269, 278 (S.D.N.Y. 1988).  More specifically, privity has been found between prison chaplains in Texas and Illinois for res judicata purposes because the chaplains all were employed by the Federal Bureau of Prisons. See Church of the New Song v. Establishment of Religion on Taxpayers' Money in the Federal Bureau of Prisons, 620 F.2d 648, 652 (7th Cir. 1980), cert. denied, 450 U.S. 929 (1981).  The defendants in the prior and present actions, although different individuals, are all correctional officials employed by the Connecticut Department of Correction.  The claims asserted in both actions concern official rules and practices.  The court concludes that privity exists between the defendants in the two cases.  Thus, the second requirement is satisfied for both parties.

The last requirement is that the claims sought to be dismissed were raised or could have been raised in the prior action.  Res judicata will apply even though the facts essential to the second suit are not the same as the facts essential to the first suit.  See Waldman v. Village of Kiryas Joel, 207 F.3d 105, 110 (2d Cir. 2000).  The important consideration is whether the

facts essential to the second suit were present in the first suit.  See Computer Assocs. Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 369 (2d Cir. 1997), cert. denied, 523 U.S. 1106 (1998).

The prior action concerned the close custody program.  The plaintiffs alleged that the SRGTM designation and review hearings did not afford adequate due process protections, challenged the conditions of confinement in the close custody unit, challenged the practice of informing local law enforcement when a SRGTM inmate is released and complained about readmitting inmates to the same SRGTM status they held upon discharge.  In the proposed amended complaint, the plaintiffs also included claims for denial of equal protection and violation of the Uniform Administrative Procedures Act and challenged the due process afforded at the periodic status reviews.  They argued that the pattern of assaults resulting from housing together inmates known to be threats to one another subjected all close custody inmates to the danger of assault and violence.  Although the plaintiffs were not permitted to file the amended complaint as a class action, they were afforded an opportunity to file a supplemental complaint including those claims as to themselves.

In the present action, the plaintiff includes claims of denial of due process at SRGTM status reviews, denial of equal protection, violation of the Uniform Administrative Procedures Act and exposure of inmates to the threat of violence by other

13

inmates.  The plaintiff challenges the conditions of confinement in the close custody unit and the practices of informing law enforcement when a SRGTM inmate is released and readmitting SRGTM inmates at the same classification they held upon discharge.  A comparison of the complaints in the two cases indicates that the facts underlying the claims in both cases existed at the time of the filing of the prior case.  Thus, certain of the claims meet the final test.

The defendants' motion for summary judgment is granted as to the claims for denial of due process[6] and equal protection with regard to SRGTM reviews, the reporting of discharged SRGTM inmates to local law enforcement and readmission of these inmates at the same SRGTM status, violation of the Uniform Administrative Procedures Act, the conditions of confinement in the close custody unit and the exposure to violence because inmates known to be threats to one another are housed together.  These claims are barred by res judicata.  The defendants' motion is denied on res judicata grounds as to the claims for failure to make accommodation for the plaintiff's mental illness in violation of the Americans with Disabilities Act, failure to protect the plaintiff from assault by his cellmate, failure to protect the

---

[6]The plaintiff's cross motion for summary judgment addresses only the claim for denial of due process.  Because the due process claim is barred by res judicata, the plaintiff's motion for summary judgment must be denied.

plaintiff from retaliatory actions by the defendants and denial of mental health treatment.  The court cannot determine whether the facts underlying these claims were existed at the time the prior case was filed.

    C.   <u>Americans with Disabilities Act</u>

The plaintiff claims that the defendants failed to make accommodations in the close custody program for his mental illness in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.  The defendants argue that the plaintiff's claim lacks merit because he was not denied participation in any program.

The State of Connecticut is a public entity within the meaning of the ADA.  <u>See</u> 42 U.S.C. § 12131(1)(A)(defining public entity to include any state or local government).  Although Browdy does not name the State of Connecticut as a defendant, the Second Circuit has recognized that a valid ADA claim may be stated against a state official in his official capacity.  <u>See Henrietta D. v. Bloomberg</u>, 331 F.3d 261, 289 (2d Cir. 2003).  The defendants in this case are all state employees.  Thus, Browdy may validly state an ADA claim against the defendants in their official capacities.

Title II of the ADA, entitled "Public Services," provides, in relevant part: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of

such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Title II defines the term "qualified individual with a disability" as "an individual with a disability who ... meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2).

Although the plaintiff states that he is disabled because he is mentally ill, he provides no objective evidence in opposition to the defendants' motion for summary judgment to support this assertion.  However, because the defendants' evidence does refer to some consultations with the mental health staff regarding the plaintiff, the court will assume, for purposes of deciding defendants' motion, that the plaintiff is an individual with a disability within the meaning of the ADA.

The plaintiff's ADA claim is based upon his argument that because of his mental health issues he should have been excused from the close custody program requirement that he share a cell with a former member of a rival gang.

One of the requirements of the close custody program is that inmates renounce their gang membership.  One of the ways inmates must demonstrate their renunciation is by agreeing to be housed with an inmate formerly associated with a rival gang.  (See

16

Defendant Rodriguez' Response to Interrogatories #4, attached as
Ex. P to Pl.'s Decl., Doc. #91.)   The record evidence shows that
the prison mental health staff recommended that the plaintiff be
permitted input regarding his cellmate.   The plaintiff progressed
to Phase II of the program with his choice of cellmate and shared
a cell with that inmate without incident.   The cellmate was later
returned to Phase I and the plaintiff got into a fight with his
new cellmate.   The plaintiff's altercation with his new cellmate
does not show that he was prevented from participating in the
close custody program.

Even if it did, the Second Circuit has held that "a private
suit for money damages under Title II of the ADA may only be
maintained against a state if the plaintiff can establish that
the Title II violation was motivated by either discriminatory
animus or ill will due to disability." Garcia v. S.U.N.Y. Health
Sciences Center of Brooklyn, 280 F.3d 98, 111 (2d Cir. 2001).
The court noted that the plaintiff could establish discriminatory
animus or ill will by a burden-shifting technique similar to that
adopted in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05
(1973), or a motivating-factor analysis similar to that adopted
in Price Waterhouse v. Hopkins, 490 U.S. 228, 252-58 (1989).   In
Garcia, the Second Circuit affirmed the grant of summary judgment
in favor of the defendants on the ADA claim because the plaintiff
failed to allege discriminatory animus or ill will based on his

disability.  See Garcia, 280 F.3d at 112-13.

The plaintiff has provided no evidence that he requested a single cell prior to his December 2005 grievance.  That grievance was marked compromised because Dr. Chaplin ordered a single cell for the plaintiff.  (See Copies of Grievance and Response, attached as Ex. O to Pl.'s Decl., Doc. #91.)  The plaintiff's evidence indicates that once the plaintiff made his concerns known, the defendants referred the matter to the mental health staff.  The court concludes that the plaintiff has not alleged any facts suggesting that any actions of the defendants were motivated by a discriminatory animus.  The defendants' motion for summary judgment is granted as to the ADA claim against the defendants in their official capacities.

The plaintiff does not indicate in his supplemental complaint that he brings his ADA claim against the defendants in their official capacities only.  Thus, the court must consider the viability of the ADA claims against the defendants in their individual capacities.  Although a state or local government, or subdivision thereof, is included within the definition of public entity, see 42 U.S.C. § 12131(1)(A), specific public employees are not.  Title II of the ADA does not "provide[] for individual capacity suits against state officials."  See Garcia, 280 F.3d at 107.  Accordingly, the defendants' motion for summary judgment is granted as to the ADA claims against the defendants in their

18

individual capacities as well.

D.   Eighth Amendment

The plaintiff alleges that the defendants violated his Eighth Amendment rights by failing to protect him from assault by his cellmate, retaliating against him and harassing him by imposing disciplinary sanctions when the underlying disciplinary charge had been dismissed and denying him mental health treatment.

1.   Failure to Protect

The court has granted the defendants' motion for summary judgment as to the plaintiff's general claim that the defendants failed to protect him, and other close custody inmates, from assault by a cellmate formerly associated with a rival gang.  The court now considers the plaintiff's specific claim regarding the altercation with his cellmate while he was in Phase II.[7]  (See Suppl. Compl., Doc. #19, at ¶24.)

The Eighth Amendment's proscription against cruel and unusual punishment imposes a duty on prison officials to "'take reasonable measures to guarantee safety of the inmates.'"  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).  This duty includes protecting inmates from harm at the hands of other inmates.  See id.; Fischl

_____

[7]The plaintiff alleges that his cellmate bit him and hit him in the eye with an electrical adapter contained in a sock.

19

v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997).

To establish a constitutional violation, a prisoner must show that he was "incarcerated under conditions posing a substantial risk of serious harm," Farmer, 511 U.S. at 834, and that the prison official showed "deliberate indifference" to the prisoner's health or safety.  Deliberate indifference exists where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of fact from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.  See Hayes v. New York City Dep't Of Corrections, 84 F.3d 614, 620 (2d Cir. 1996) (holding that prison official possesses culpable intent to support a claim of deliberate indifference where he "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm.").  For example, correctional staff would be on notice of a substantial risk of serious harm where there has been prior hostility between inmates, or a prior assault by one inmate on another, and those inmates are not kept separated.  See, e.g., Ayers v. Coughlin, 780 F.2d 205, 209 (2d Cir. 1985) (inmate plaintiff stated claim for failure to protect where he alleged that correctional official knew inmate who harmed plaintiff previously has issued death threats against him); Morales v. DOC, 842 F.2d 27, 30 (2d

Cir. 1983) (allegation that defendant knew that inmate who assaulted plaintiff in his sleep previously had attacked him was sufficient to state claim for failure to protect).

Although the plaintiff and his cellmate were former members of rival gangs, both inmates had renounced their gang membership and agreed to share a cell with a former member of a rival gang as a condition of participation in the close custody program. Thus, the former gang membership in and of itself is insufficient to put correctional staff on notice of potential harm.

The plaintiff and his cellmate lived together for over two weeks without incident. They fought when the plaintiff stabbed his cellmate in the neck with a pen. In response, the cellmate tried to bite the plaintiff and hit him in the eye with an electrical adaptor contained in a sock. (See Defendant Rodriguez' Response to Second Set of Interrogatories #20, attached as Ex. O to Defs.' Rule 56(a) Statement, Doc. #77.)

The plaintiff has provided no evidence in opposition to defendants' motion for summary judgment suggesting that any defendant was on notice that the plaintiff would attack his cellmate or that the plaintiff had informed any defendant that he had been threatened by his cellmate. Thus, there is no evidence showing that any defendant was aware of an actual significant risk of harm to the plaintiff and disregarded that risk. The plaintiff has failed to meet his burden of presenting evidence to

demonstrate the existence of a genuine issue of material fact on this claim.  Accordingly, the defendants are entitled to summary judgment in their favor on the failure to protect claim.

      2.   <u>Retaliation</u>

The plaintiff argues that the defendants retaliated against him and harassed him for filing this action by improperly imposing disciplinary sanctions after the underlying disciplinary charge had been dismissed.  He also alleges that his legal mail was opened and mail he sent to the Office of the Attorney General did not reach its destination.

The defendants argue that the incidents described by the plaintiff do not rise to the level of constitutional violations. The plaintiff concedes that the alleged actions alone do not rise to the level of constitutional violations, but argues that the defendants have not addressed his actual claim, that is, that the actions were taken in retaliation for filing this lawsuit.

Because the plaintiff has conceded that the underlying actions do not rise to the level of a constitutional violation, the defendants' motion for summary judgment is granted as to any claims based on the underlying allegations.  The retaliation claim, however, remains pending because the defendants did not address this claim in their motion.

      3.   <u>Mental Health Treatment</u>

Finally, the court considers any possible claims for denial

of mental health treatment.  Deliberate indifference to a serious medical or mental health need constitutes cruel and unusual punishment in violation of the Eighth Amendment.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976).  To prevail on a deliberate indifference claim, the plaintiff must provide evidence of "acts or omissions sufficiently harmful to evidence deliberate indifference" to a serious medical need.  Id. at 106.  He must show either intent to deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel.  See id. at 104-05.  Mere negligence will not support a section 1983 claim; the conduct complained of must "shock the conscience" or constitute a "barbarous act."  McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970)).  Mere disagreement with prison officials about what constitutes appropriate care does not state a claim cognizable under the Eighth Amendment.  See Ross v. Kelly, 784 F. Supp. 35, 44 (W.D.N.Y.), aff'd, 970 F.2d 896 (2d Cir.), cert. denied, 506 U.S. 1040 (1992).

There are both subjective and objective components to the deliberate indifference standard.  See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995).  The alleged deprivation must be "sufficiently serious" in objective terms.  Wilson v. Seiter, 501

U.S. 294, 298 (1991).  See also Nance v. Kelly, 912 F.2d 605, 607
(2d Cir. 1990) (Pratt, J., dissenting) ("'serious medical need'
requirement contemplates a condition of urgency, one that may
produce death, degeneration, or extreme pain").  As stated above,
the plaintiff has provided no objective evidence regarding his
mental health.  He fails to establish that he suffers from a
serious mental health need.

Even if the court were to assume that the plaintiff suffers
from a serious mental health need, however, he fails to satisfy
the second component of the deliberate indifference test.  The
plaintiff also must present evidence that, subjectively, the
charged prison official acted with "a sufficiently culpable state
of mind."  Hathaway, 37 F.3d at 66.  "[A] prison official does
not act in a deliberately indifferent manner unless that official
'knows and disregards an excessive risk to inmate health or
safety; the official must both be aware of facts from which the
inference could be drawn that a substantial risk of serious harm
exists, and he must also draw the inference.'"  Id. (quoting
Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

The plaintiff does not name as a defendant any mental health
staff member.  From that, the court concludes that he does not
challenge the actual mental health treatment he received.  The
record reveals that the plaintiff's requests for mental health
treatment were forwarded to the mental health staff.  The

plaintiff was permitted to participate in the selection of his cellmate at the recommendation of the mental health staff.  See Defendant Rodriguez' Response to Interrogatories #10 & #11, attached as Ex. P to Pl.'s Decl., Doc. #91.)  The plaintiff provides no evidence that he requested a single cell before December 2005.  At that time, his request was referred to the mental health staff and he was moved to a single cell.  See Pl.'s Decl., Doc. #91, Ex. O.)  The plaintiff has provided no evidence to show that any named defendant was aware of or disregarded a substantial risk to the plaintiff's safety as a result of his mental health needs.  The plaintiff fails to meet his burden on any claim of deliberate indifference to a serious mental health need.  The defendants' motion for summary judgment is granted as to this claim.

IV.  Conclusion

   The defendants' motion for summary judgment [**doc. #77**] is **GRANTED**.  The plaintiff's motions for summary judgment [**doc. #100**] is **DENIED**.  The only claim remaining in this case is the plaintiff's claim that the defendants retaliated against him for filing this action.

   This is **not** a recommended ruling.  The parties have consented to the exercise of jurisdiction by a magistrate judge and the case was transferred to the undersigned for all purposes on March 7, 2005.  (See Doc. #50.)

25

**SO ORDERED** this 21st day of September, 2006, at Hartford,

Connecticut.

                              /s/ Donna F. Martinez
                              DONNA F. MARTINEZ
                              UNITED STATES MAGISTRATE JUDGE